<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| SAMRA PLASTIC & RECONSTRUCTIVE SURGERY, <br><br> Plaintiff, <br><br> v. <br><br> CIGNA HEALTH AND LIFE INSURANCE COMPANY, *et al.*, <br><br> Defendants. | Civil Action No. 23-21810 (MAS) (RLS) <br><br> **MEMORANDUM OPINION** |

<u>**SHIPP, District Judge**</u>

This matter comes before the Court on a Motion to Dismiss by Defendants Cigna Health and Life Insurance Company ("Cigna" or "Defendant") and Bottomline Technologies, Inc., ("Bottomline") (collectively, "Defendants"). (ECF No. 10.) Plaintiff Samra Plastic & Reconstructive Surgery ("Plaintiff" or "Samra") opposed (ECF No. 14), and Defendants replied (ECF No. 15). The Court has carefully considered the parties' submissions and decides the matter without oral argument under Local Civil Rule 78.1. For the reasons stated below, the Court grants in part and denies in part Defendants' Motion to Dismiss.

I.      **BACKGROUND**

    A.      **Factual Background**

The Patient N. E. (the "Patient") received healthcare through a plan offered by their employer, Bottomline, a New Hampshire corporation, and health insurance provider Cigna, a Connecticut corporation. (Compl. ¶¶ 2-3, 6.) Plaintiff is a New Jersey company and is a non-participating or out-of-network healthcare provider with regard to the Patient's healthcare plan. (*Id.* ¶¶ 1, 14.) Plaintiff obtained an assignment of benefits from the Patient. (*Id.* ¶ 49.)

The Patient consulted with a board-certified plastic surgeon employed and/or contracted by Plaintiff who recommended a breast reconstruction involving several procedures. (*Id.* ¶¶ 15, 16.) At some time between the consultation and the surgery, as part of Plaintiff's normal business practice, a telephone call occurred between representatives of Plaintiff and Cigna. (*Id.* ¶ 18.) Several current procedural terminology ("CPT")[1] codes were discussed during the call to determine reimbursement for the Patient's procedures, and a representative of Cigna represented that it would pay 80% of the charges billed by Samra for the CPT codes selected. (*Id.* ¶ 20.) The phone call was memorialized by reference number "4245." (*Id.*)

The Patient underwent several procedures at Portsmouth Regional Hospital on May 20, 2021. (*Id.* ¶ 16.) After this, Cigna was billed approximately $165,700.00, a number consistent with the CPT codes that had been discussed in the pre-authorization phone call between it and Plaintiff.

---

[1] A CPT code is a "number that identifies and describes the services performed by [a] medical provider in accordance with a systematic listing published by the American Medical Association." *Merling v. Horizon Blue Cross Blue Shield of N.J.*, No. 04-4026, 2009 WL 2382319, at *2 (D.N.J. July 31, 2009).

(*Id.* ¶¶ 23-24.) Cigna paid nothing towards these charges, leaving the Patient with the full balance due. (*Id.* ¶ 27.)[2]

### B. Procedural Background

Plaintiff brings this case against Defendants under the Employee Retirement Income Security Act of 1974 ("ERISA") and New Jersey contract law. (*Id.* ¶¶ 13, 30, 50.) The Complaint includes seven counts: (1) Breach of Contract ("Count One"); (2) Promissory Estoppel ("Count Two"); (3) Account Stated ("Count Three"); (4) Failure to Make All Payments Pursuant to Member's Plan under 29 U.S.C. § 1132(a)(1)(B) ("Count Four"); (5) Breach of Fiduciary Duty and Co-Fiduciary Duty under 29 U.S.C. § 1132(a)(3), 29 U.S.C. § 1104(a)(1), and 29 U.S.C. § 1105(a) ("Count Five"); (6) Failure to Establish/Maintain Reasonable Claims Procedures under 29 C.F.R. § 2560.503-1 ("Count Six"); and (7) a Failure to Establish a Summary Plan Description in Accordance with 29 U.S.C. § 1022 ("Count Seven"). (*Id.* ¶¶ 29-82.) Plaintiffs aver Counts Four through Seven (the "Federal Claims") only to the "extent ERISA governs this dispute." (*See id.* ¶¶ 47, 64, 66, 76.)

Defendants move to dismiss Plaintiff's Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).[3] As to the Federal Claims, Defendants contend that Plaintiff does not have direct or derivative standing to bring any ERISA claims, has not adequately pled assignment for the ERISA claims, and fails to state a claim. (Defs.' Moving Br. 14-21, ECF No. 10.) Defendants additionally argue that Counts One through Three (the "State Claims") are

---

[2] Plaintiff lists Bottomline as a co-defendant but fails to make any connection between the events and Bottomline's potential liability. (*See generally* Compl.) Accordingly, all claims against Bottomline are dismissed without prejudice.

[3] Any reference to a "Rule" or "Rules" hereinafter refers to the Federal Rules of Civil Procedure.

preempted by ERISA, are unenforceable under the applicable statute of frauds, and fail to state a claim. (*Id.* at 5-13.)

## II. LEGAL STANDARD

Rule 8(a)(2) "requires only a 'short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

A district court conducts a three-part analysis when considering a motion to dismiss under Rule 12(b)(6). *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). First, the court must identify "the elements a plaintiff must plead to state a claim." (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must identify all of the plaintiff's well-pleaded factual allegations, accept them as true, and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). The court can discard bare legal conclusions or factually unsupported accusations that merely state the defendant unlawfully harmed the plaintiff. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Third, the court must determine whether "the [well-pleaded] facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678). On a Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

4

## III. DISCUSSION

The Court finds that: (1) Plaintiff does not have standing to bring federal ERISA claims; (2) the State Claims are not preempted by ERISA; (3) Defendants fail to show why the statute of frauds applies to the State Claims; and (4) Plaintiff sufficiently pleads breach of contract, promissory estoppel, and account stated claims. The Court addresses each finding in turn.

### A. The Federal Claims (Counts Four through Seven)

Plaintiff alleges four counts under ERISA as the Patient's assignee. (Compl. ¶¶ 46-82.) Plaintiff avers that because the Patient signed an assignment of benefits, Plaintiff has standing to bring suit under ERISA. (*Id.* ¶ 49.) Cigna, however, correctly argues that Plaintiff cannot bring the ERISA claims because Plaintiff is not a "participant" or "beneficiary," and cannot bring suit as an assignee because of an anti-assignment provision contained in the Patient's healthcare plan. (Defs.' Moving Br. 14.)

Under the relevant provisions of ERISA, only "participants" and "beneficiaries" have direct standing to bring suit. *Cohen v. Indep. Blue Cross*, 820 F. Supp. 2d 594, 603 (D.N.J. 2011) (citing 29 U.S.C. § 1132(a)(1)(B)). The Third Circuit has an extensive history of allowing healthcare providers to raise ERISA claims as assignees, provided that the assignment was valid, on a theory of derivative standing. *See, e.g.*, *Cardionet, Inc. v. Cigna Health Corp.*, 751 F.3d 165, 178 (3d Cir. 2014); *Atl. Plastic & Hand Surgery, PA v. Anthem Blue Cross Life and Health Ins. Co.*, No. 17-4600, 2018 WL 1420496, at *4 (D.N.J. Mar. 22, 2018). Importantly, however, these assignments can be deemed invalid if the health insurance plan contained a clear and unambiguous anti-assignment clause. *See Am. Orthopedic & Sports Med. v. Indep. Blue Cross Blue Shield*, 890 F.3d 445, 453 (3d Cir. 2018) ("[W]e perceive no compelling reason to stray from the 'black-letter

law that the terms of an unambiguous private contract must be enforced.'" (quoting *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 150 (2009))).

Plaintiff alleges in its Complaint that it has derivative standing to seek relief under the relevant ERISA sections "based on the assignment of benefits obtained by Plaintiff from Patient." (Compl. ¶ 49.) While this in itself may be enough to grant Plaintiff standing to bring its suit, *see, e.g.*, *Cardionet*, 751 F.3d at 178, Defendants raise the preclusive effect of the anti-assignment provision in the Patient's plan.[4] (Defs.' Moving Br. 14-15.) The clause reads:

> You may not assign to any party, including, but not limited to, a provider of healthcare services/items, your right to benefits under this plan, nor may you assign any administrative, statutory, or legal rights or causes of action you may have under ERISA, including but not limited to, any right to make a claim for plan benefits, to request plan or other documents, to file appeals of denied claims or grievances, or to file lawsuits under ERISA. Any attempt to assign such rights shall be void and unenforceable under all circumstances.

(*Id.* at 14-15.)

Defendants correctly argue that the clause is clear and unambiguous in precluding Plaintiff from bringing any ERISA claims as an assignee.[5] *See, e.g.*, *Cohen*, 820 F. Supp. 2d at 604-09 (holding that medical provider did not have standing to bring an ERISA claim because an assignment of benefits was prohibited by the healthcare plan, which contained a provision that

---

[4] In ruling on a motion to dismiss, the Court is only allowed to evaluate the Complaint and the "documents on which the claims made therein were based." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410,1425 (3d Cir. 1997). Because the Patient's plan is at the root of several of the claims, the Court may look to the plan in evaluating the instant motion. (*See generally* Compl.)

[5] To the extent Plaintiff contends in its reply brief that it is in possession of a limited power of attorney, such is not pled in the Complaint. (Pl.'s Reply Br. 18, ECF No. 4.) Had Plaintiff alleged the ERISA claims as an agent with a limited power of attorney, the outcome of the instant motion may have been otherwise. *See, e.g.*, *Am. Orthopedic*, 890 F.3d at 455 (noting that precluding a power of attorney seems "particularly ill-suited for the healthcare context where patients must rely on their agents when they anticipate even short-term incapacitation").

6

stated "[t]he right . . . to receive benefit payments . . . is not assignable in whole or in part to any . . . entity"). As such, Plaintiff does not have standing to bring the Federal Claims, and therefore, Defendants' motion to dismiss the Federal Claims is granted.[6]

### B. The State Claims (Counts I-III)

Defendants next contend that the State Claims are preempted by federal law because the claims relate to an ERISA healthcare plan and rest on largely the same facts as the ERISA claims. The Court will first address this argument, which is unpersuasive because none of the State Claims in this case satisfy the Third Circuit test to determine ERISA preemption. Next, the Court will turn to Defendants' argument that the breach of contract claim is unenforceable because of the applicable Statute of Frauds. Finally, the Court will evaluate whether the State Claims sufficiently state a claim upon which relief can be granted.

#### 1. ERISA Does Not Preempt the State Claims

Defendants maintain that the State Claims must be dismissed because they are either completely or expressly preempted by ERISA which, as discussed above, Plaintiff does not have standing to sue under. Defendants argue that the State Claims are subject to complete preemption under § 502(a) of ERISA. (Defs.' Moving Br. 5-6.)

##### a. Complete Preemption

Complete preemption refers to when Congress has such a strong presence in a field that "any complaint raising a claim in that area is 'necessarily federal in character.'" *Progressive Spine & Orthopaedics, LLC v. Empire Blue Cross Blue Shield*, No. 16-1649, 2017 WL 751851, at *6 (D.N.J. Feb. 27, 2017) (quoting *LaMonica v. Guardian Life Ins. Co. of Am.*, No. 96-6020, 1997

---

[6] Count Six is dismissed with prejudice, as the regulation Samra sues under, 29 C.F.R. § 2560.503-1, does not create a private right of action. *See Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 144 (1985).

WL 80991, at *3 (D.N.J. Feb. 20, 1997)). "'[O]nce an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law.'" *Progressive Spine*, 2017 WL 751851, at *6 (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987)).

In the ERISA context, a federal court has jurisdiction over a state law claim due to complete preemption when: "(1) the plaintiff could have brought the action under Section 502(a) of ERISA[7][;] and (2) no independent legal duty supports the plaintiff's claim." *Progressive Spine*, 2017 WL 751851, at *6 (citing *Pascack Valley Hosp. v. Loc. 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 393, 400 (3d Cir. 2004)). Complete preemption only applies if both questions are answered in the affirmative. *N.J. Carpenters & the Trs. Thereof v. Tishman Constr. Corp. of N.J.*, 760 F.3d 297, 303 (3d Cir. 2014). In other words, "if the state law claim is not derived from, or conditioned upon the terms of an ERISA plan, and nobody needs to interpret the plan to determine whether that duty exists, then the duty is independent." *Same Day Procs., LLC v. UnitedHealthcare Ins. Co.*, No. 21-956, 2022 WL 807051, at *3 (D.N.J. Mar. 17, 2022) (quoting *N.J. Carpenters*, 760 F.3d at 303-04).

In this case, the State Claims are contracts claims that relate to a specific interaction between Cigna and Plaintiff. As discussed above, Plaintiff could not have brought the claims under ERISA because it does not have standing. Because of this, the first prong of the complete preemption test is not satisfied. *See Progressive Spine*, 2017 WL 751851, at *6.

Even if Defendants could persuasively contend that Plaintiff has standing, the second part of the test is also not satisfied. *See id.* The relevant facts of the State Claims have to do with the

---

[7] Section 502(a) provides a civil enforcement mechanism for plan "participants" and "beneficiaries". 29 U.S.C. § 1132. This section essentially determines whether a party has standing to sue under ERISA. *See id.*

8

oral contract created through the phone call prior to the surgery and the alleged authorization in this phone call, as well as Cigna's failure to pay the bill. (Compl. ¶¶ 30-33.) These counts, therefore, do not invoke ERISA, nor do they require interpretation of ERISA.[8] A litany of case law establishes that state law contract claims such as these that are separate from ERISA and are not subject to federal preemption on the basis on ERISA. *See, e.g., Progressive Spine*, 2017 WL 751851, at *10 ("[T]he alleged oral contract, or quasi-contract, between Plaintiff and Defendant creates an independent legal duty removing Plaintiff's state law claims from the scope of ERISA Section 502(a)'s complete preemption.").[9] Because of this, the second prong of the complete preemption test is also not satisfied and these counts are therefore not preempted under a complete preemption theory. *See Progressive Spine*, 2017 WL 751851, at *6.

### b.     Express Preemption

Samra's state law claims are also not expressly preempted by ERISA § 514. To ensure "that ERISA's mandates supplanted the patchwork of state law previously in place . . . Congress enacted section 514(a)—a broad express preemption provision, which 'supersede[s] any and all [s]tate laws insofar as they may now or hereafter relate to any employee benefit plan.'" *Plastic Surgery*

---

[8] Even if the pre-authorization phone call made explicit reference to the healthcare plan by specifying payment of the "usual and customary rates" for the procedures, this would still not trigger ERISA preemption. *See Plastic Surgery Ctr., P.A. v. Aetna Life Ins. Co.*, 967 F.3d 218, 233-34 (3d Cir. 2020) (holding that because determining in-network payments simply requires checking an industry-standard or fee schedule, it is only a cursory examination and does not trigger express preemption).

[9] Defendants argue that because the State Claims rely on the same facts as the ERISA counts, they are necessarily preempted. The Third Circuit, however, has previously held that "[t]he mere fact that a claim arises against the factual backdrop of an ERISA plan does not mean it makes 'reference to' that plan." *Plastic Surgery Ctr.*, 967 F.3d at 235 (internal quotation marks omitted). In *Plastic Surgery Center*, the Court denied a motion to dismiss on similar grounds because the oral promises were the basis of the claim, and the healthcare plan was not critical to finding liability. *Id.* at 231-32.

*Ctr.*, 967 F.3d at 226 (second alteration in original) (quoting 29 U.S.C. § 1144(a)). The reach of ERISA's express preemption provision applies not only to state statutes and regulations which relate to an ERISA governed employee benefit plan, but also to state "common law causes of action." *Id.* (citing *Menkes v. Prudential Ins. Co. of Am.*, 762 F.3d 285, 294 (3d Cir. 2014)). The Supreme Court has recognized that, for the purposes of express preemption, a state law relates to an employee benefit plan "if it has a connection with or reference to such a plan." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96-97 (1983).

The Third Circuit's recent decision in *Plastic Surgery Center*, establishes that Samra's claims do not require impermissible reference to the Patient's health insurance plan. The Third Circuit has:

> distill[ed] two overlapping categories of claims [requiring impermissible reference to] ERISA plans: (a) claims predicated on the plan or plan administration, e.g., claims for benefits due under a plan . . . or where the plan is a critical factor in establishing liability, and (b) claims that involve construction of [the] plan[ ], or require interpreting the plan's terms.

*Plastic Surgery*, 967 F.3d at 230 (internal quotations omitted) (citations omitted) (fourth and fifth alterations in original). Like the claims at issue in *Plastic Surgery Center*, Samra's claims:

> arose precisely because there was no coverage under the plans for services performed by an out-of-network provider like [Samra]. . . . Thus, absent a separate agreement between [Cigna] and [Samra], there was no obligation for [Samra] to provide services to the plan participants, no obligation for [Cigna] to pay [Samra] for its services, and no agreement that compensation would be limited to benefits covered under the plan.

*Id.* at 231. Cigna asserts that *Plastic Surgery Center* is distinguishable because the Patient's benefit plan provides some coverage for out-of-network services, and the precise scope of that coverage must be determined by reference to the Patient's benefit plan. (Def.'s Reply Br. 8-9, ECF No. 15.) These facts, however, are not evident on the face of Samra's complaint, which alleges that Cigna

10

agreed to pay 80% of the total billed charges and that the total amount billed "represents the usual and customary charges for" the procedures performed. (Compl. ¶¶ 20, 22, 25.) It is not clear from the Complaint, therefore, that evaluating Samra's claims, if they require any examination of the Patient's plan, will involve anything more than "'a cursory examination of the plan' . . . [which] do[es] not entail 'the sort of exacting, tedious, or duplicative inquiry that the preemption doctrine is intended to bar.'" *Plastic Surgery Ctr.*, 967 F.3d at 234 (quoting *Nat'l Sec. Sys., Inc. v. Iola*, 700 F.3d 65, 85 (3d Cir. 2012)); *see also Premier Orthopaedic Assocs. of S. N.J., LLC v. Anthem Blue Cross Blue Shield*, 675 F. Supp. 3d 487, 492-93 (D.N.J. 2023) (declining to find express preemption of similarly pled breach of contract, promissory estoppel, and account stated claims when "nothing in the [c]omplaint direct[ed] th[e] Court to consider the patient's healthcare benefit plan."); *Gotham City Orthopedics, LLC v. United Healthcare Ins. Co.*, No. 21-11313, 2022 WL 111061, at *6 (D.N.J. Jan. 12, 2022) (finding state law claims were not preempted when "[t]here [was] nothing in the [a]mended [c]omplaint to suggest that [plaintiff] agreed to incorporate the terms of [defendant's] agreements with patients[.]").

The Patient's plan, furthermore, is not a "critical factor in establishing liability." *Plastic Surgery*, 967 F.3d at 230 (quoting *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 139-40 (1990)). The Complaint alleges that Cigna incurred an independent obligation to pay Samra upon authorizing the CPT codes associated with the Patient's surgeries and agreeing to pay 80% of the billed charges. (*See* Compl. ¶ 20.) Since Samra's claims are predicated on an independent contractual or quasi-contractual duty, and not on the Patient's ERISA-governed plan, § 514 does not preempt Samra's state law claims. *See Plastic Surgery Ctr.*, 967 F.3d at 231; *see also Kindred Hosp. E., LLC v. Loc. 464A United Food & Com. Workers Union Welfare Serv. Benefit Fund*, No. 21-10659, 2021 WL 4452495, at *8 (D.N.J. Sept. 29, 2021) (collecting cases and explaining that

11

"[t]he Third Circuit, as well as other courts, ha[ve] consistently held that where the predicate of a claim is not an ERISA plan but an independent state-law created duty, Section 514(a) does not preempt the state-law claim."). For the foregoing reasons, this Court declines to find that Samra's state law claims, as alleged, require impermissible reference to the Patient's ERISA-governed health insurance plan. As such, Samra's state law claims are also not expressly preempted by § 514.

    2. *Defendants Have Not Met Their Burden of Showing why the Statute of Frauds Applies in this Case*

Defendants next argue that the New Jersey Statute of Frauds defeats the State Claims because this particular type of contract must be sufficiently memorialized in writing. (Defs.' Moving Br. 5.) Defendants, however, fail to meet their burden of establishing why the Statute of Frauds applies to these claims.[10] There is no existing case law that suggests this situation is covered by the scope of N.J. STAT. ANN. § 25:1-15. *See, e.g.*, *Patel v. Patel*, No. 21-1811, 2023 WL 8929199, at *9-10 (D.N.J. Dec. 27, 2023) (granting a motion to dismiss the plaintiff's breach of contract claim on the grounds that the *personal* guaranty by the defendant of plaintiff's *personal* loans to a third party was not in writing); *Guo v. Lor*, No. 20-5099, 2023 WL 3749958, at *5 (D.N.J. June 1, 2023) (holding the defendant's breach of contract counterclaim alleging that he, along with the plaintiff, agreed to *personally* repay a third party, failed because the Statute of

---

[10] The case upon which Defendants rely is readily distinguishable from the case at hand and therefore does not provide guidance in this situation. (Defs.' Moving Br. 5 (citing *Atl. Plastic & Hand Surgery, P.A. v. Ralling*, 286 A.3d 1210, 1211 (N.J. Super. Ct. Law Div. 2021).) *Ralling* deals with a "family member's oral guaranty of payment" to a healthcare provider and whether or not "a parent who is the insurance policyholder [can] be liable for unreimbursed medical expenses incurred by an emancipated child" who is a dependent. 286 A.3d at 1211. The relationship in *Ralling* is therefore fundamentally different from the insurer-out-of-network-provider relationship seen here. *See id.*

12

Frauds required a writing).[11] Defendants Statute of Frauds contention therefore is rejected as Defendants failed to carry their burden of establishing the Statute of Frauds' applicability here.

### 3. Plaintiff Sufficiently Pleads Breach of Contract

In order to survive a motion to dismiss a breach of contract claim, a plaintiff must plead "(1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations." *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007). Under New Jersey law, a contract is established once the parties have mutual assent and consideration. *Fletcher-Harlee Corp. v. Pote Concrete Contractors*, 421 F. Supp. 2d 831, 833 (D.N.J. 2006), *aff'd*, 482 F.3d 247 (3d Cir. 2007) (citing *Cohn v. Fisher*, 287 A.2d 222, 224 (N.J. Super. Ct. Law Div. 1972)). Mutual assent can be determined based on the "apparent intention . . . outwardly manifest[ed] to the other contracting party." *Id.* at 834 (quoting *Cohn*, 287 A.2d at 225). The contract itself must explain the performance required from each party in sufficient detail, ensuring the essential terms are clear. *Bergen Plastic Surgery v. Aetna Life Ins. Co.*, No. 22-227, 2022 WL 4115701, at *2 (D.N.J. Sept. 9, 2022) (citing *Weichert Co. Realtors v. Ryan*, 608 A.2d 280, 284 (N.J. 1992)). "[U]nless some specific exception such as the Statute of Frauds applies, an oral contract binds the parties in the same manner as a written contract." *Progressive Spine*, 2017 WL 751851, at *10. In similar cases, this Court has held that alleging "when the contract was entered, the parties to the contract, the essential terms of the

---

[11] Even if the Statute of Frauds was applied to this situation, it would again fail. While the Patient is a beneficiary of this agreement, it was never alleged that Defendant was accepting liability for the obligation of the Patient, but that Plaintiff and Defendant entered into an agreement that Defendant failed to uphold. (*See* Compl. ¶¶ 30-34.) Additionally, the "leading object" exception, which applies when a defendant has subsumed the debts of another primarily for their own benefit, prevents Defendant from asserting this defense. *Ralling*, 286 A.3d at 1213 (citing *Howard M. Schoor Associates, Inc. v. Holmdel Heights Const. Co.*, 343 A.2d 401, 404-05 (N.J. 1975)). Because insurance companies cover the expenses of insured parties in order to make an eventual profit and, therefore, benefit themselves, they are an exception to the Statute of Frauds.

13

contract, how [defendants] breached the contract," and plaintiff's performance of their obligations was "sufficient to plead a breach of contract" for the purposes of a motion to dismiss. *W.H.P.M., Inc. v. Immunostics, Inc.*, No. 18-16031, 2020 WL 359146, at *4 (D.N.J. Jan. 22, 2020).

Here, Plaintiff alleges that the contract between Plaintiff and Cigna to pay for the Patient's procedures was entered into prior to the performance of said procedures through a phone call where a Cigna representative relayed to Plaintiff reference number "4245." (Compl. ¶¶ 18-20.) Plaintiff, therefore, alleges that Cigna and Samra are parties to a binding oral contract. (*Id.* ¶ 30.) Specifically, Plaintiff adequately alleges the essential terms of the contract, here the CPT codes for the procedures to be performed by Plaintiff on the Patient and 80% of the bill for those procedures to be paid by Cigna. (*Id.* ¶¶ 20, 23, 25.) The breach is also sufficiently alleged as failure to pay anything towards the bill for the agreed-upon procedures performed on the Patient. (*Id.* ¶ 27.) Finally, Plaintiff sufficiently alleges that it performed its end of the contract by performing the procedures on the Patient. (*Id.* ¶ 16.) These facts, when taken as true, are enough to successfully plead a breach of contract claim, and the motion to dismiss Count One is therefore denied. *See Frederico*, 507 F.3d at 203.

    4.    *Plaintiff Sufficiently Pleads Promissory Estoppel*

To sufficiently plead promissory estoppel, a plaintiff must adequately allege: "(1) a clear and definite promise[;] (2) made with the expectation[] that the promisee will rely on it[;] (3) reasonable reliance[;] and (4) definite and substantial detriment." *United Cap. Funding Grp., LLC v. Remarkable Foods, LLC*, No. 21-3291, 2022 WL 2760023, at *4 (D.N.J. Jul. 14, 2022) (citing

*Scagnelli v. Schiavone*, 538 F. App'x 192, 194 (3d Cir. 2013)).[12] The promise must not be subject to change, or else it cannot satisfy the "clear and definite" element. *Del Sontro v. Cendant Corp.*, 223 F. Supp. 2d 563, 574-75 (D.N.J. 2002) (finding defendant's memorandum warning that the settlement at issue was voluntary and the terms could be changed at any time was not definite enough for a promissory estoppel claim). New Jersey law, however, is lenient in order to avoid injustice on the "clear and definite" element. *See Pop's Cones, Inc. v. Resorts Int'l Hotel*, 704 A.2d 1321, 1321 (N.J. Super. Ct. App. Div. 1998). In order to determine reasonable reliance, New Jersey courts often use industry practice, though it is not dispositive. *Fletcher-Harlee*, 482 F.3d at 251 (holding that industry standard is instructive in determining what is reasonable, but it was unreasonable for plaintiff to rely on an industry standard assertion when explicitly told not to rely on it).

Here, Plaintiff alleges that by authorizing certain codes, Cigna "promised that Plaintiff would be paid for its services at the rate of eighty percent (80%) of the billed charges." (Compl. ¶ 37.) As the promise was not subject to change upon certain conditions and listed the exact CPT codes that were agreed upon, (*id.* ¶ 20), it was clear and definite. *See Del Sontro*, 223 F. Supp. 2d at 574-75 (finding an agreement indefinite because it explicitly stated that it was "subject to change at any time"). Plaintiff alleges that the phone call, the authorization numbers, and the later addition of modifiers to the approved CPT codes are normal business practice. (Compl. ¶¶ 18-19, 23.) Because industry practice is instructive in determining what qualifies as reasonable reliance for

---

[12] Promissory estoppel is a quasi-contractual theory. *See Bethlehem Steel Corp. v. Litton Indus., Inc.*, 488 A.2d 581, 593 (N.J. 1985). While Plaintiff can plead this in addition to breach of contract, Plaintiff cannot recover for both because the two are mutually exclusive. *See Lincoln Harbor Enters., LLC v. M.Y. Diplomat*, No. 08-526, 2008 WL 5046787, at *5 (D.N.J. Nov. 21, 2008) (determining a court need not address quasi-contract or account stated claims pled in the alternative after granting a default judgment on a breach of contract claim because the claims are mutually exclusive) (citing *Gagliardo v. Connaught Labs., Inc.*, 311 F.3d 565, 570 (3d Cir. 2002)).

the third element, the fact that this phone call was an industry standard would mean Plaintiff's reliance on said phone call, taken as true at this stage, is reasonable, especially considering Plaintiff was not told that the call was unreliable. *See Fletcher-Harlee*, 482 F.3d at 251 (finding plaintiff's reliance on an industry-standard submission that explicitly directed plaintiff not to rely on it unreasonable). Finally, Plaintiff sufficiently alleges a detriment: at a minimum, $154,256.00 plus interest, costs, and attorneys' fees. (Compl. ¶¶ 38, 40.) Plaintiff therefore sufficiently pleads a promissory estoppel claim.

                5.      *Plaintiff Sufficiently Pleads a Claim for Account Stated*

Samra's final state law claim rests on "the somewhat arcane [doctrine] known as an account stated." 2 *Corbin on Contracts* § 7.19. This claim is "essentially a species of contract claim." *Accounteks.Net, Inc. v. CKR Law, LLP*, No. A-1067-20, 2023 WL 3331802, at *8 (N.J. App. Div. May 9, 2023). To establish an account stated claim, the plaintiff needs to prove: (1) "the existence of a debt from a transaction or series of transactions memorialized in such a statement"; (2) express or implied mutual agreement on the correctness of the amount between the parties involved; and (3) "a[n express or implied] promise by the debtor to pay that sum." *Id.* at *8 (citing *Adolph Hirsch & Co. v. James C. Malone, Inc.*, 99 N.J.L. 473, 474 (E. & A. 1924)). As for the second element, assent can be implied by "failure to object within a reasonable time." *Id.*[13]

Here, Plaintiff has sufficiently alleged an account stated claim. The first and third elements are sufficiently pled where Plaintiff avers that Defendant pre-authorized the procedures and the

---

[13] This Court has previously applied a three-part test requiring the additional element of previous transactions between the parties to establish a debtor-creditor relationship. *Bergen Plastic*, 2022 WL 4115701, at *3 (quoting 29 Williston on Contracts § 73:26 (4th ed.)). This test, however, is ultimately rooted in out-of-state law, and would be an unfaithful application of New Jersey state law if applied here. *See id.* This Court therefore applies the standard described above.

price to be paid[14] (Compl. ¶ 20) and memorialized this agreement in a written bill sent to Cigna (Compl. ¶ 24). The second element is also adequately pled where Plaintiff alleges that Defendant promised Plaintiff it would pay for 80% of the Patient's surgery, or $154,256.00. (Compl. ¶¶ 24, 26.) Moreover, Defendant acknowledged receipt of the bills and did not object within a reasonable time, as is required to show a lack of assent (*Id.* ¶ 45); *see Accounteks.Net*, 2023 WL 3331802, at *8 (citing *Adolph Hirsch*, 99 N.J.L. at 474).[15]

## IV.   CONCLUSION

For the reasons set forth above, the Court grants Defendants' motion to dismiss the Federal Claims for lack of standing and denies Defendants' motion to dismiss the State Claims. All counts against Bottomline are dismissed. An Order consistent with this Memorandum Opinion will follow.

_____
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**

---

[14] To the extent Defendants argue that Plaintiff fails to plead an agreed-upon amount due, (Defs.' Moving Br. 12-13), this is immaterial because Plaintiff does in fact allege an express agreed-upon amount due: 80% of the bill for the pre-approved procedures. (Compl. ¶ 20.)

[15] Defendants argue that Plaintiff fails to plead a debtor-creditor relationship based on previous transactions, therefore failing to allege an account stated claim. (Defs.' Moving Br. 12-13); *see Bergen Plastic*, 2022 WL 4115701, at *3. A debtor-creditor relationship based on previous transactions, however, is not an element of an account stated claim under New Jersey state law, and instead, in New Jersey, a claim can be based on a singular interaction. *See Accounteks.Net*, 2023 WL 3331802, at *8 (citing *Adolph Hirsch & Co.*, 99 N.J.L. at 474). Defendants' argument therefore fails. *See id.*

17